UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ADRIAN D. SMITH,                    )
                                    )        Case No. 1:17CV2600
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )        MAGISTRATE JUDGE DAVID A. RUIZ
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
                                    )
            Defendant.              )        MEMORANDUM AND ORDER
                                    )

Plaintiff Adrian D. Smith ("Smith" or "claimant") challenges the final

decision of Defendant Commissioner of Social Security ("Commissioner"), denying

his application for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g).

The issue before the court is whether the final decision of the Commissioner

is supported by substantial evidence and, therefore, conclusive. For the reasons set

forth below, the Commissioner's final decision is affirmed.

# I. PROCEDURAL HISTORY

On November 3, 2014, Smith filed an application for SSI benefits, alleging disability beginning March 16, 2012. (R. 8, Transcript ("Tr."), at 11, 666-669, 687-689, 700-713.) Smith's application was denied initially and upon reconsideration. *Id.* at 591-607, 608-623, 624-626, 630-631. Thereafter, Smith filed a request for a hearing before an administrative law judge ("ALJ"). *Id.* at 632-634.

The ALJ held the hearing on September 16, 2016. (R. 8, Tr., at 547-590.) Smith appeared at the hearing, was represented by counsel, and testified. (*Id.* at 549, 553-580.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 559, 581-589.) On November 15, 2016, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Smith was disabled. (R. 8, Tr., at 11-22; *see generally* 20 C.F.R. § 416.920(a).) Based on his review, the ALJ concluded Smith was not disabled. *Id.* at 11, 22. The Appeals Council denied Smith's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 8, Tr., at 1-4.)

Smith seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

Smith presents the following legal issues for the court's review:

1. Whether the ALJ properly evaluated and assigned appropriate weight to the opinion of David Harrison, a treating post masters nurse.

2. Whether the ALJ's mental residual functional capacity finding is supported by substantial evidence.

## II.  PERSONAL BACKGROUND INFORMATION

Smith was born on June 11, 1977, and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (R. 8, Tr., at 21, 553, 666.)  He has a limited education, and is able to communicate in English.  (R. 8, Tr., at 21, 700, 702.)  Smith has no past relevant work.  (R. 8, Tr., at 21, 560, 581.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Smith's brief alleging error by the ALJ.  Smith applied for SSI benefits on November 3, 2014, alleging disability beginning March 16, 2012.  (R. 8, tr., at 11, 666-669.)  He identified the physical or mental conditions which limit his ability to work as:  "degenerative disc disease, depression, anxiety, sciatic nerve damage, sleep apnea, scoliosis, alcohol and drug abuse."  *Id.* at 701.  The claimant testified, in response to the ALJ's question regarding what prevents him from working, that it was back pain, shooting pains in his legs, and an inability to get to the bus stop to go to work.  (R 8, tr., at 562-563.)

On March 16, 2013, Smith presented to Fairview Hospital, reporting that he was in a low-speed motor vehicle accident.  (R. 8, tr., at 784.)  Smith reported he

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

was in the front passenger seat, banged his knees on the dashboard, and complained of right knee pain, as well as low back pain. *Id.* On physical examination, Smith had normal range of musculoskeletal motion, with no tenderness, although he had mild spinal and paraspinal tenderness. *Id.* at 785. Bilateral knee exam was nontender, with no effusions and no ecchymosis. *Id.* X-rays of the back and right knee were normal. *Id.* at 788-789. Smith was diagnosed with lumbar strain and knee contusion. *Id.* at 786.

Smith presented at North Coast Health on April 30, 2014, for a diagnostic assessment of his longstanding depression and anxiety. (R. 8, tr., at 1092-1096.) Adrian Jurkiw, LISW, assessed Smith with Major Depressive Disorder, recurrent, and Post Traumatic Stress disorder. *Id.* at 1096.

On October 15, 2014, Smith present to Samuel Rosenberg, M.D., for a spine consult for back pain which radiates to both toes. (R. 8, tr., at 1030.) On neurological examination, Smith had full range of motion with both arms and legs, although he reported cervical and lumbar tenderness on both sides. *Id.* at 1031-1032. He also experienced back pain bilaterally on straight leg raises. *Id.* at 1032. Dr. Rosenberg's impression was lumbar radiculopathy, C7 radiculopathy on the right, depression and anxiety, with a history of alcohol and marijuana use. *Id.* at 1032-1033. The doctor prescribed neurontin, and X-rays of the lumbar spine and hips. *Id.* at 1033. MRIs were done of the lumbar spine on October 24, 2014, which revealed L3 through S1 disc disease, without significant canal or foramin pathology. *Id.* at 1009-1010, 1492. On October 28, 2014, Kevin Leisinger, M.D., reviewed the

results of the MRI with Smith, which showed degenerative disc disease, with some bulging at L3, and recommended he follow up with MetroHealth Spine Center. *Id.* at 1071-1072.

Smith filed his application for SSI benefits on November 3, 2014. (R. 8, tr., at 11, 666-669.)

On November 26, 2014, the claimant presented to pain specialist Hong Shen, M.D., at Lutheran Hospital. (R. 8, tr., at 1449-1456.) Smith reported low back pain that radiates to both legs, for the past two years. *Id.* at 1449. He reported that over-the-counter pain medications did not help his pain, but the Percocet, Ultram and Flexiril he was treated with after the auto accident helped. *Id.* at 1449, 1451. Neurosurgeon Dr. Rosenberg recommended an injection, but the record noted "patient is not interested." *Id.* at 1451. On examination, Smith had normal range of motion in all joints, with some tenderness on palpitation over paraspinous. *Id.* at 1452. His gait was normal. *Id.* Straight leg test was negative. *Id.* Smith was assessed with chronic low back pain, and lumbar disc displacement without myelopathy. *Id.* Dr Shen recommended that Smith lose weight and become more active. *Id.* Dr. Shen noted that the neurosurgeon Dr. Rosenberg had offered an epidural injection, which Smith had declined, and Dr. Shen again offered an epidural steroid injection, which claimant again declined. *Id.* at 1452-1453. The doctor indicated that the patient has significant psychological issues, and needed to have a comprehensive chronic pain rehabilitation program. *Id.* at 1453.

Mitchell Wax, Ph.D., conducted a consultative psychological evaluation of claimant on December 19, 2014. (R. 8, tr., at 1291-1297.) Smith reported to Dr. Wax that the main reason he is not able to work is "because he has medical problems." *Id.* at 1292. Smith reported he had residual back pain from the car accident two years before, plus disc disease and scoliosis. *Id.* at 1292. The claimant reported he had a long criminal history, having been arrested over twenty times, including three times for drug trafficking, at least four times for disorderly conduct, and two terms of incarceration for possession of cocaine. *Id.* at 1293. "The claimant stated that even though he has been arrested multiple times for trafficking cocaine and for possession of cocaine, he never used cocaine." *Id.* Smith stated he smokes marijuana daily, and "drink[s] at least a fifth of alcohol three times a week," to help him deal with his pain. *Id.*

Smith reported to Dr. Wax that he was usually depressed, frequently had crying spells, and had problems with anger. (R. 8, tr., at 1294.) Dr. Wax noted that claimant appeared fretful, and claimed to have daily panic attacks. *Id.* at 1295. Dr. Wax did not conduct any psychological testing, but based on his clinical interview and the social worker's April 2014 assessment, he diagnosed claimant with major depression, polysubstance dependence, and panic disorder with agoraphobia. *Id.* at 1291, 1295; *see generally* tr., at 1092-1096 (April 2014 assessment).

Dr. Wax's functional assessment was that Smith would be able to understand, remember, and carry out instructions on a job, as well as maintain attention and concentration. *Id.* at 1296. The psychologist noted that claimant was

able to perform simple and multi-step tasks. *Id.* Dr. Wax stated Smith would

respond appropriately to supervisors and coworkers in a work setting, although he

noted that Smith stated that he gets in arguments with family members and

strangers three to four times a week. *Id.* Dr. Wax assessed that Smith would not

respond appropriately to work pressures in a work setting, due to his depression.

*Id.* at 1297.

On referral from Dr. Shen, Smith presented to Judith Scheman, Ph.D., at the

Cleveland Clinic Neurological Center for Pain, for a pain medicine evaluation on

January 2, 2015. (R. 8, tr., at 1328-1333.) Smith's chief complaints were low back

pain, bilateral leg pain, and occasional neck pain. *Id.* at 1328. Dr. Scheman's

impressions included that claimant was catastrophizing his increasing pain, and

that his depression and anxiety were contributing to his pain perceptions. *Id.* at

1331. Dr. Scheman recorded diagnoses of chronic low back pain, lumbar disc

displacement without myelopathy, and psychological factors affecting his physical

condition. *Id.* at 1329, 1331. The psychologist noted that Smith had a severe

problem with sleep, and recommended an evaluation of that issue occur before the

chronic pain rehabilitation program. *Id.* at 1331. Dr. Scheman also recommended a

substance abuse evaluation and treatment recommendation prior to admission in

the pain program. *Id.*

Dr. Scheman's goals for Smith were to decrease his pain, improve his mood

and function, and eliminate habituating drugs, through his participation in the

chronic pain rehabilitation program (substance abuse education track) for three to four weeks. (R. 8, tr., at 1331.) Her prognosis for him was fair to good. *Id.*

On initial review, state agency physician Maria Congbalay, M.D., completed a physical residual functional capacity ("RFC") assessment on January 9, 2015. (R. 8, tr., at 601-603.) Dr. Congbalay opined that Smith was limited to lifting and carrying twenty pounds occasionally, and ten pounds frequently, and otherwise unlimited ability to push or pull. *Id.* at 601. Smith was capable of standing, walking, or sitting for about six hours of an eight-hour workday. *Id.* The claimant could occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds. *Id.* He could frequently balance; occasionally stoop, kneel, crouch or crawl; and needs to avoid all exposure to unprotected heights or dangerous machinery. *Id.* at 601-602.

A psychiatric review completed by Bruce Goldsmith, Ph.D., on January 15, 2015, found that Smith had affective disorders (12.04) and anxiety-related disorders (12.06). (R. 8, tr., at 599.) These disorders resulted in a mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. *Id.*

Dr. Goldsmith also completed a mental RFC assessment on January 15, finding that Smith was moderately limited in his abilities to: maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday without interruptions from psychologically based symptoms, and perform at a consistent

pace without an unreasonable number and length of rest periods.  (R. 8, tr., at 603-604.)  Dr. Goldsmith opined that Smith would be best suited for work tasks that would not require collaboration with others, strict or high productivity demands, or a consistent fast pace.  *Id*. at 604.

Dr. Goldsmith also assessed that Smith was moderately limited in his ability to interact appropriately with the general public, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 8, tr., at 604.)  He said the claimant would be best suited for non-public work, with superficial interactions with others.  *Id*.  In addition, Dr. Goldsmith rated Smith as moderately limited in the ability to respond appropriately to changes in the work setting.  *Id*.  The psychologist stated that Smith would be best suited for a work environment where job duties and requirements are generally static, and changes in routine are infrequent and easily adaptable.  *Id*.

On February 23, 2015, clinical psychologist Giries W. Sweis, Psy.D., at the Cleveland Clinic Neurological Center for Pain completed a pain psychology progress note on Smith.  (R. 8, tr., at 1709-1713.)  Dr. Sweis indicated that Smith was late for his follow-up appointment, appearing unengaged, withdrawn, and slightly disheveled and malodorous.  *Id*. at 1709.  Smith reported that he continued to struggle with pain, and had been to the Emergency Department twice earlier that month, where he received ibuprofen and a 10-day supply of Percocet.  *Id*.  Dr. Sweis assessed chronic pain intertwined with chemical dependency, moderately severe depression and profound pain related functional impairment.  *Id*. at 1709-1710.

The psychologist diagnosed claimant with alcohol dependence, cannabis dependence, chronic low back pain, lumbar disc displacement without myelopathy, and psychological factors affecting his physical condition. *Id.* at 1710. Dr. Sweis recommended cognitive behavioral therapy for behavior modification and cognitive restructuring. *Id.* Dr. Sweis indicated that Smith needed to have a clean urine toxicology screen in three to four weeks given his history of daily cannabis use, that he needed to stop using marijuana and alcohol, and that he needed to attend AA or NA meetings three times per week. *Id.* Dr. Sweis ordered a urine toxicology screen for that day, and a follow-up appointment in one week. *Id.*

On March 2, 2015, Smith presented for a sleep medicine consultation with Tina Waters, M.D., at the Cleveland Clinic Sleep Disorders Center. (R. 8, tr., at 1714-1719.) Dr. Leisinger referred claimant for evaluation of his sleep apnea. *Id.* at 1714. Dr. Waters planned a polysomnogram to evaluate for obstructive sleep apnea and rapid eye movement sleep behavior disorder (RBD). *Id.* at 1719. She referred him to behavioral sleep medicine, and to follow up after the sleep study. *Id.* The subsequent sleep study did confirm severe obstructive sleep apnea. *Id.* at 1727.

A psychiatric review completed by Vicki Warren, Ph.D., on April 13, 2015, on reconsideration agreed with the earlier review done by Dr. Goldsmith, finding that Smith had affective disorders (12.04) and anxiety-related disorders (12.06), which resulted in a mild restriction of activities of daily living, with moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or

pace.  (R. 8, tr., at 615-616.)  Dr. Warren's mental RFC assessment was also in complete accord with Dr. Goldsmith's assessment.  *Id.* at 619-621.

Robin Benis, M.D., conducted a consultative internal medicine examination on April 20, 2015.  (R. 8, tr., at 1338-1346.)  Smith reported to Dr. Benis that his chief complaints were chronic low back pain, herniated discs, hypertension, and sleep apnea.  *Id.* at 1338.  He claimed to have severe sciatica that radiates down both legs, that he is unable to walk far distances or to lift or carry.  *Id.* Smith said he had pain all day and at night.  *Id.*  He reported he goes to the E.R. frequently, where he gets percocet and morphine for his severe pain.  *Id.*  He also has hypertension and asthma.  *Id.*  Dr. Benis reported his gait was halting, that he seemed to have pain while walking, but he did not use an assistive device.  *Id.* at 1339.  Manual muscle testing results were reliable and mostly normal.  *Id.* at 1343. There was some reduced range of motion in the dorsolumbar spine.  *Id.* at 1345.

Dr. Benis' diagnosis was low back pain with sciatica, radiculopathy, hypertension, history of possible asthma and chest pain.  (R. 8, tr., at 1341.) Smith's prognosis was fair.  *Id.*  The doctor's medical source statement indicated that claimant had mild to moderate limitations with ambulation due to chronic low back pain.  He should avoid activities requiring moderate, or greater, exertion because of chest pain.  Smith should not be exposed to particulate matter due to the history of possible asthma.  *Id.* at 1342.

On reconsideration, state agency physician James Cacchillo, D.O., completed a physical RFC assessment on May 9, 2015, which found identical limitations as

those assessed in January by Dr. Congbalay.  (R. 8, tr., at 617-619, *see id.* at 601-603.)

Smith presented to Seerat K. Bahnimal, LISW, for psychological evaluation on May 17, 2016.  (R. 8, tr., at 1811-1818.)  Smith reported his chief complaint was "I just feel down in the dumps."  *Id.* at 1812.  During the mental status examination, Smith reported: a history of depression, seeing shadows "trying to take me off this planet," a sense of paranoia and belief people were plotting against him.  *Id.* at 1814.  The claimant reported nightmares and flashbacks, and . an obsession with the pain he was currently experiencing.  *Id.*  The social worker reported that claimant seemed to be seeking pain medications, but given claimant's history of substance abuse, it was recommended not to prescribe any.  *Id.*  The social worker diagnosed Smith with schizophrenia, paranoid type; anxiety disorder; post traumatic stress disorder; and cannabis abuse.  *Id.*

Physician Assistant[2] David Harrison completed a Medical Source Statement on the patient's physical capacity on August 5, 2016.  (R. 8, tr., at 1652-1653.) Harrison indicated that Smith was limited to lifting or carrying 15 pounds

---

[2]  Both parties have misidentified Harrison's job title.  The ALJ apparently misread Harrison's signature, followed by "PA-C," as "PM-C."  *See* R. 8, tr., at 20, 1653.  The court was unable to locate a medical abbreviation, PM-C, which led to further investigation. The plaintiff misstates Harrison's credentials, identifying him as "the post masters nurse who cared for Mr. Smith at Lutheran Hospital."  (R. 12, PageID #: 1892.)  The defendant refers to Harrison as a "nurse practitioner."  (R. 13, PageID #: 1904.)  In fact, reference to the Cleveland Clinic's website indicates that "David Harrison, PA-C" is a Physician Assistant in the Center for Spine Health at Lutheran Hospital, with a degree from Cuyahoga Community College (a two-year

occasionally, and 10 pounds frequently, as heavier amounts would increase stress on Smith's "injured low back area."  *Id.* at 1652.  Harrison opined that Smith can stand or walk less than one hour in an 8-hour workday, and less than five minutes at a time.  *Id.*  Smith was only capable of sitting for about three hours in a workday, and only for ten minutes at a time.  *Id.*  Harrison also opined that Smith could rarely climb, balance, stoop, crouch, kneel or crawl.  *Id.*  All of the aforementioned limitations were due to lumbar disc displacement with radiculopathy.  *Id.*

PA Harrison also indicated that Smith could rarely reach, push or pull, that he could occasionally perform gross manipulation, and he could frequently perform fine manipulation.  (R. 8, tr., at 1653.)  Harrison noted that Smith would need to be restricted from heights, moving machinery, and temperature extremes.  *Id.* Harrison indicated that Smith had been prescribed a cane and a walker, as well as a CPAP breathing machine.  *Id.*  Smith would also need to alternate positions between sitting, standing, and walking, at will.  *Id.*  PA Harrison further indicated that Smith experienced severe pain that would interfere with concentration, take him off task, and cause absenteeism.  (R. 8, tr., at 1653.)  Smith would need to elevate his legs at will, and would also require additional unscheduled rest periods during the workday.  *Id.*

On September 29, 2016, consultative clinical psychologist, Richard G. Litwin, Ph.D., prepared a psychological evaluation of Smith, to determine if competitive

---

college which only confers Associate's degrees and certificates).  *See* https://my.clevelandclinic.org/staff/14448-david-harrison.

employment was feasible at that time. (R. 8, tr., at 1825-1828.) Smith reviewed his medical history and his current medications for Dr. Litwin. *Id*. at 1825. Given the claimant's reduced mobility, Dr. Litwin administered the various tests at Smith's home. *Id*. at 1826. Results of the Wechsler Adult Intelligence Scale-IV placed Smith's intellectual skills in the borderline range. *Id*. Weakness was noted in processing speed, abstract reasoning, and attention span, although his command of simple vocabulary was adequate. *Id*. Results of the Wide Range Test of Achievement-4 revealed learning limitations in reading, spelling, and math. *Id*. at 1827. Dr. Litwin assessed Smith with major depressive disorder, recurrent, severe with psychotic features; schizophrenia; reading disorder; cannabis use; and borderline intellectual functioning. *Id*. at 1827.

Dr. Litwin's summary impressions were that Smith is severely symptomatic, "has hallucinations, feels paranoid, is overwhelmed by depressive symptoms, has suicidal thoughts and has been increasingly anxious if not agoraphobic." (R. 8, tr., at 1828.) Dr. Litwin noted that Smith was very focused on his physical pain, seemed "emotionally brittle," and may need more intensive psychiatric intervention. *Id*. Dr. Litwin concluded that, given the above, he did not believe that Smith was employable. *Id*.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his November 15, 2016, decision:

14

1.  The claimant has not engaged in substantial gainful activity since November 3, 2014, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease, obesity, obstructive sleep apnea, diabetes mellitus, affective disorders, anxiety disorders and substance addition disorders (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined 20 CFR 416.967(b), except he can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can never be exposed to unprotected heights or moving mechanical parts.  Mentally, the claimant can work in an environment with no production rate pace requirements.  The claimant can occasionally interact with the public, co-workers and supervisors.  He can tolerate occasional routine workplace changes.

5.  The claimant does not have any past relevant work (20 CFR 416.965).

6.  The claimant was born on June 11, 1977, and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled  (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since November 3, 2014, the date the application was filed (20 CFR 416.920(g)).

(R. 8, Tr., at 13, 15, 21, 22.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work

experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

### A.  Opinion Evidence

The first issue Smith presents is "Whether the ALJ properly evaluated and assigned appropriate weight to the opinion of David Harrison, a treating post masters nurse." (R. 12, PageID #: 1878, 1892-1895.) As noted earlier, Harrison is a Physician Assistant, not a "post masters nurse." Smith contends that the ALJ failed to utilize the appropriate standards when evaluating Harrison's functional assessment. *Id.* at 1892.

The ALJ addressed Harrison's assessment as follows:

> I give little weight to the opinion of David Harrison, PM-C [*sic*] (Exhibit 18F). He is not an acceptable medical source. Also, the opinion is not supported by medical evidence of record, which generally shows limitation of range of motion in lumbar spine but normal gait and normal neurological findings.

(R. 8, tr., at 20.)

The ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 416.927(e)(2). In addition, the ALJ must consider any statements about the claimant's functional capacity that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 416.945(a)(3).

Harrison, as a physician assistant, is not an "acceptable medical source" within the meaning of the regulations; and, therefore, he cannot render a "medical opinion." *Trollinger v. Berryhill*, No. 1:17CV01358, 2018 WL 2163824, at *17 (N.D. Ohio Apr. 25, 2018), *adopted by* 2018 WL 2149274 (N.D. Ohio May 10, 2018); *Scroggins v. Commissioner*, No. 15CV10366, 2016 WL 1090375, at *5 (E.D. Mich. Mar. 21, 2016); *Irizarry v. Colvin*, No. 1:13CV2161, 2014 WL 6879117, at *12 (N.D. Ohio Dec. 4, 2014); *see also* 20 C.F.R. §§ 416.913(a) (2016), 416.913(d)(1) (2016); SSR 06-3p, 2006 WL 2329939, at *1. Under the regulations that were in effect at the time[3] that Harrison's claim was filed and adjudicated, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (2016).

At the time of the regulations in effect when the ALJ rendered his decision, a physician assistant was not an "acceptable medical source," but was rather considered an "other source." 20 C.F.R. § 416.913(d)(1) (2016); *Trollinger*, 2018 WL 2163824, at *17; *Scroggins*, 2016 WL 1090375, at *5; *Irizarry*, 2014 WL 6879117, at *12; *see generally* 20 C.F.R. § 416.913(a) (2016) (listing acceptable medical sources).

SSR 06-3p discusses the importance of the distinction between "acceptable medical sources" and other health care providers, as follows:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.

SSR 06-3p, 2006 WL 2329939, at *2 (internal citations omitted).

Because a physician assistant is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to a physician assistant's report. *Trollinger*, 2018 WL 2163824, at *17; *Scroggins*, 2016 WL 1090375, at *5; *see generally Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050, at *4 (6th Cir. Nov. 16, 2015); *Hill v. Commissioner*, 560 Fed. Appx 547, 550 (6th Cir. 2014); *Turner v. Colvin*, 2015 WL 5474081, at *5 (E.D. Ky. Sept. 16, 2015). The ALJ has discretion to assign such evidence any weight he feels is

appropriate based on the evidence of record.  *See generally Noto*, 2015 WL 7253050, at *4; *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007).

Although information from other sources such as a physician  assistant cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function.  SSR 06-3p, 2006 WL 2329939, at *2; *Cruse*, 502 F.3d at 541; *Trollinger*, 2018 WL 2163824, at *17; *Reynolds v. Colvin*, No. 1:12CV2994, 2013 WL 5316578, at *7 (N.D. Ohio Sept. 23, 2013).  The ALJ must consider the other source's evidence, and how much weight to give to it. *Cruse*, 502 F.3d at 541.  In evaluating such evidence, the ALJ should consider factors such as the length of the treating relationship, the consistency with other evidence, and how well the source's opinion is explained.  *Trollinger*, 2018 WL 2163824, at *17; *Irizarry*, 2014 WL 6879117, at *12; *see generally McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam); *Cruse*, 502 F.3d at 541; *Reynolds*, 2013 WL 5316578, at *7.  While the ALJ is directed to consider these factors, no exhaustive analysis of them is required.  *See generally Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Upon review of the record, the court finds that substantial evidence supports the ALJ's decision to give little weight to PA Harrison's medical source statement. The ALJ determined that Harrison's statement "is not supported by medical evidence of record, which generally shows limitation of range of motion in lumbar spine but normal gait and normal neurological findings."  (R. 8, tr., at 20.)  In the

21

ALJ's earlier discussion of the medical evidence, he indicated that Dr. Shen had found that Smith had limited range of motion in the lumbar spine, but his gait was normal. *Id.* at 17, citing tr., at 1449-1456. His neurological exam was normal. *Id.* The ALJ also noted that, during an Emergency Department visit in June 2015, the doctors found Smith had normal strength and no neurological deficits. *Id.* at 17-18, citing tr., at 1409-1410. A May 2016 examination also found full range of motion and normal strength. *Id.* at 18, citing tr., at 1803. The ALJ indicated that a normal gait had been observed in numerous visits to the emergency room. *Id.* at 19, citing MER. Supportability and consistency of the evidence are two of the factors that the ALJ properly considers. *See* SSR 06-3p, 2006 WL 2329939, at *4. The severe physical limitations that Harrison opined were not supported by the objective record and were inconsistent with other substantial evidence. The court finds no error in the ALJ's consideration of Harrison's medical statement.

## B. Mental RFC

The second issue presented is "Whether the ALJ's mental residual functional capacity finding is supported by substantial evidence." (R. 12, PageID #: 1878, 1895-1896.) Smith asserts that the ALJ's mental RFC determination is "legally insufficient and not supported by substantial evidence." *Id.* at 1895.

The ALJ's RFC found, in relevant part, that:

Mentally, the claimant can work in an environment with no production rate pace requirements. The claimant can occasionally interact with

the public, co-workers and supervisors. He can tolerate occasional
routine workplace changes.

(R. 8, tr., at 15.) Smith contends that there was evidence in the record which would

support greater social and stress tolerance restrictions than those in the ALJ's RFC.

(R. 12, PageID #: 1895-1896.) The Commissioner asserts that the ALJ's mental

RFC findings were supported by the opinions of the state agency psychological

consultants. (R. 13, PageID #: 1916-1917.)

The claimant's RFC indicates what he can still do despite his limitations.

*Bowman v. Commissioner*, 683 Fed. Appx 367, 371 (6th Cir. 2017); 20 C.F.R. §

416.945(a)(1). The ALJ has the responsibility for reviewing all the evidence in

making this determination, and evaluates every medical opinion received in

evidence. 20 C.F.R. §§ 416.927(c), (e)(2). Although the ALJ reviews and considers

all the evidence before him, the responsibility for assessing the claimant's residual

functional capacity rests with the ALJ. 20 C.F.R. § 416.946(c). This decision is an

administrative, not a medical, determination. *Lumpkin v. Colvin*, 112 F. Supp. 3d

1169, 1172 (D. Colo. 2015). "The ALJ is not bound to accept the opinion or theory of

any medical expert, but may weigh the evidence and draw his own inferences."

*Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *12 (6th Cir. Aug. 27,

2009); *see also Lumpkin*, 112 F. Supp. 3d at 1172.

State agency doctors and psychologists are considered highly-qualified

experts in disability evaluation, and the ALJ must consider their evidence. 20

C.F.R. § 416.927(e)(2). Although the ALJ generally accords more weight to opinions

from a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 416.927(e).

Here, the ALJ gave great weight to the opinions of the reviewing psychological consultants Dr. Goldsmith and Dr. Warren. (R. 8, tr., at 20.) The ALJ stated that they limited the claimant to work that would not require collaboration with others, high productivity demands or a fast pace. *Id.*, citing R. 8, tr., at 603-604, 615-616. In addition, they determined:

> Claimant is best suited for nonpublic work with superficial interaction with others. He is also best suited for a work environment where job duties/requirements are generally static and changes in routine are infrequent and easily adaptable.

*Id.* The Commissioner argues (R. 13, PageID #: 1916-1917), and the court agrees, that the ALJ's mental RFC findings are supported by the opinions of Dr. Goldsmith and Dr. Warren.

Smith, however, contends that the ALJ should have relied instead on the opinions of two consultative examiners, Dr. Wax and Dr. Litwin. Smith states that Dr. Wax concluded he would not respond appropriately to work pressures due to depression. (R. 12, PageID #: 1895, citing R. 8, tr., at 1297.) The ALJ recognized the sole limitation which Dr. Wax had opined, agreeing that "claimant does have some limits in functioning," but overall gave Dr. Wax's opinion "other weight." (R. 8, tr., at 19.) The RFC reflected limits on work pressures (no production rate requirements, occasional routine changes) and claimant's interaction with others

(occasional). (R. 8, tr., at 15.) Smith also states that Dr. Litwin found him severely symptomatic with hallucinations, paranoia, depression, suicidal thoughts, and anxiety. (R. 12, PageID #: 1895-1896, citing R. 8, tr., at 1828.) The ALJ gave Dr. Litwin's opinion little weight, "because it is based on a one-time evaluation and is heavily dependent on the subjective report of the claimant." (R. 8, tr., at 20.)

Although Smith points to evidence that could support a contrary conclusion to the ALJ's determination (R. 12, PageID #: 1895-1896), the relevant issue is not whether there is evidence to support a ruling different than that reached by the ALJ. *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

The ALJ cited sufficient evidence and reasonably assessed the pertinent opinions when determining Smith's mental RFC. Because the ALJ cited sufficient reasons for discounting the consultative examiners opinions, the ALJ did not err when determining their weight. The court finds the ALJ's mental RFC is supported by substantial evidence, and the record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the ALJ's

RFC determination.  *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

## VIII.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.


<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:  <u>March 25, 2019</u>